UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
MENDELSSOHN PEREZ,
                         :    **REPORT & RECOMMENDATION**
         Plaintiff,             **and**
                         :    **MEMORANDUM & ORDER**
     -against-
                         :    09 CV 0264 (JPO)(MHD)
RUDDY DE LA CRUZ, et al.,
                         :
         Defendants.
------------------------------------x

TO THE HONORABLE J. PAUL OETKEN, U.S.D.J.:

    Pro se plaintiff Mendelssohn Perez has filed this lawsuit
against defendants MTA Police Officer "John de la Cruz," Ruddy de
la Cruz, Dolca de la Cruz, and the "de la Cruz family."[1] Plaintiff
asserts a variety of claims under the civil rights statutes,
including false arrest, and a number of common-law claims,
including negligence and intentional infliction of emotional
distress. (Am. Compl. ¶¶ 1, 16-28, 36-64). Plaintiff's claims are

---

   [1] The initial complaint named Ruddy and John De La Cruz as
well as several other defendants whom this court dismissed sua
sponte. (Compl., Jan. 12, 2009; Order of Partial Dismissal, dated
Jan. 12, 2009 (docket no. 3)). Plaintiff moved to amend the
complaint to add Dolca De La Cruz as a defendant through a letter
to the court dated July 13, 2009. We granted that motion by
endorsed order. (Endorsed Order, dated Oct. 27, 2009 (docket no.
23)). In his amended complaint, plaintiff also makes allegations
against the State of New York, which he failed to list in the
caption as a named defendant and which, in any case, was never
served. (See Am. Compl. ¶¶ 61-62, 76).

apparently based on a long-running dispute over his handling of a saxophone that was left in his custody by Ruddy de la Cruz. (See id. ¶ 11; Answer to Am. Compl. ("Answer") (docket no. 29) ¶¶ 11, 15).

After an apparent comedy of errors during discovery and its aftermath, defendants Ruddy and Dolca de la Cruz -- the remaining defendants in the case -- have moved for summary judgment. Plaintiff, in turn, has opposed the motion and has filed what he styles a motion to amend the complaint. He also appears to seek an order to compel discovery, which we liberally construe as an application for relief under Rule 56(f). For the reasons that follow, we deny plaintiff's motion to amend and recommend that defendants' motion for summary judgment be granted in part and denied in part.

I. <u>Prior Proceedings</u>

On July 29, 2008, plaintiff submitted a complaint against MTA Police Officer "John de la Cruz," numerous other officers, and Ruddy de la Cruz. (See Compl. (docket no. 2)). Following the partial dismissal of the initial pleading, plaintiff filed an amended complaint on July 13, 2009, naming Ruddy de la Cruz and

2

"John de la Cruz" and adding as a defendant Dolca de la Cruz. (Am. Compl. (docket no. 28)). The amended complaint also named as a defendant the "de la Cruz family," which plaintiff characterizes as an "unincorporated association." (Id. at ¶ 48).

In the amended complaint and in the course of a pretrial conference held on October 5, 2009, plaintiff and defendants' counsel offered varying accounts of the events that gave rise to the complaint. Plaintiff apparently runs, or had run, a musical instrument repair business out of a basement apartment in Washington Heights, in Manhattan. At some point in 2005, Ruddy de la Cruz gave either one or two saxophones to the plaintiff for repair, and, for whatever reason, neglected to claim one of the saxophones for more than a year. When Ruddy did return to pick up the saxophone, the plaintiff claimed that he no longer had it in his possession, and he has subsequently asserted that he had already donated it to the Salvation Army in 2007. (Oct. 5, 2009 Conference Tr. ("Tr.") at 10-12; Pl.'s "Joint Pre-Trial Order" ¶ iv). Ruddy de la Cruz commenced an action against Perez in New York City Civil Court to recover the cost of the missing instrument, and he won a $12,000.00 judgment against the plaintiff, apparently on default. (Def. Mem. in Supp. of Summ. J. Mot. 1; see also Pl.'s "Joint Pre-Trial Order" Ex. D).

3

According to plaintiff, in March 2007 Ruddy de la Cruz and an MTA officer (who plaintiff apparently understood to be Ruddy's relative by the name of John de la Cruz), entered plaintiff's premises and demanded the return of Ruddy's saxophone. He alleges that, while armed, they threatened him with physical injury, and then conducted a search of the premises, looking for the instrument. (Am. Compl. ¶¶ 8-14, 69). Plaintiff states that "Defendants' racial and ethnic animus was clearly expressed" during this invasion of his business, though he does not specify in what manner. (Id. ¶ 78). Plaintiff reports that he was trapped in the premises while this search was conducted, and he characterizes these individuals' conduct as "an illegal home invasion to effect robbery-extortion." (Id. ¶ 14). He suggests that the MTA officer was paid by the de la Cruz family to lend his uniformed assistance. (See id. ¶ 17-18). Additionally, plaintiff alleges that members of the de la Cruz family -- he does not specify who -- harassed his relatives by phone and mailed a package to plaintiff's mother in the Dominican Republic, all of which conduct was accompanied by unspecified threats against plaintiff and his family. (Am. Compl. ¶ 15;[2] see also Pl.'s "Joint Pre-Trial Order" ¶ iv). Plaintiff asserted nine claims -- (i) false arrest, (ii) false imprisonment,

---

[2] The amended complaint includes two paragraphs numbered 15. We refer here to the first.

4

(iii) intentional infliction of emotional distress, (iv) negligence, (v) "civil rights deprivation" in violation of 42 U.S.C. § 1983, (vi) racial discrimination in violation of 42 U.S.C. § 1981, (vii) racial discrimination in violation of 42 U.S.C. § 1982, (viii) "hate crimes" or "conspiracy with racial animus," and (ix) "extortion." The majority of the claims were asserted against all named defendants. However, the § 1983 claim was asserted only against the MTA officer and the State of New York, and the negligence claim was asserted only against the de la Cruz family.[3]

Ruddy and Dolca de la Cruz answered the amended complaint, denying all of its pertinent allegations. (See Answer). As further articulated by their attorney at our October 5, 2005 conference and in their portion of the joint pre-trial order, they agree that there was at least one encounter between Ruddy de la Cruz and the plaintiff concerning the saxophone. Counsel reported that at some point her client had gone with his son-in-law to Perez's premises, and, faced with Perez's insistence that he no longer had the saxophone, de la Cruz left the premises and encountered an unknown

---

[3] Plaintiff fails to identify which individuals are members of the association that he identifies as the "de la Cruz family." (See generally Am. Compl.). In the absence of any reference to other specified individuals, we interpret plaintiff's references to the "de la Cruz family" to include, jointly, defendants Ruddy and Dolca de la Cruz.

MTA officer, whom he persuaded to intervene to attempt to resolve the dispute. (Tr. 6). According to counsel, the officer attempted to mediate the dispute but was unsuccessful. De la Cruz denied having searched the premises, threatened plaintiff or sent any packages to plaintiff's family members. (Id. at 6-8; see also Defs.'Resp. to Interrogs. 19-20; Pl.'s "Joint Pre-Trial Order" Ex. B).

As for the mysterious MTA officer (referred to by plaintiff as "John de la Cruz"), plaintiff never served him.[4] Accordingly, his claims against that individual have been dismissed without prejudice. (See Report & Recommendation, dated Feb. 16, 2011 (docket no. 41); Mem. & Order, dated Mar. 14, 2011 (docket no. 42)).

The parties apparently pursued some discovery efforts from each other, though with little success. Thus, defendants objected to most of plaintiff's interrogatories and document requests (Decl. Of Priveterre in Opp'n to Pl.'s Mot. For Summ. J. ¶ 5 & Ex. E), and plaintiff never responded at all to defendants' discovery requests.

---

[4] Indeed, as reflected in plaintiff's Rule 56 opposition papers, he sought identifying information from the MTA, which advised him that it had no employee named John de la Cruz. (Pl.'s Opp'n to Def. Summ. J. Mot. Ex. A).

(<u>Id.</u> ¶ 6 & Ex. F). Nonetheless, the court-imposed discovery deadline of December 31, 2009 (<u>see</u> Order, dated Oct. 5, 2009 (docket no. 18)) passed with no applications or communications from either side to the court. Plaintiff did file a motion on May 13, 2010, complaining that defendants had not responded to his discovery requests and seeking to compel a response -- not mentioning that he had in fact previously received responses (albeit most of which consisted of objections). We granted plaintiff's motion by endorsed order dated June 7, 2010, since defendants had not filed any response to it. (Endorsed Order, dated June 7, 2010 (docket no. 31)). Our order required that defendants' discovery responses be served by June 21, 2010, but we subsequently learned that defendants had already served their responses on plaintiff by February 28, 2010. (Priveterre's June 14, 2010 letter to Ct.; Defs.' Aff., June 18, 2010; <u>see also</u> Priveterre Decl. ¶ 5 & Ex. E). As for defendants, they never sought any relief from the court for discovery derelictions by plaintiff.

In April 2010 -- well before plaintiff's belated discovery motion, with the discovery deadline of December 31, 2009 having long since passed and with no indication that either side was pursuing further discovery -- we directed that the litigants submit a joint pre-trial order by June 25, 2010. (Order, dated Apr. 22,

7

2010 (docket no. 27)). No such pre-trial order was forthcoming, and we therefore issued an order to plaintiff, directing him to show cause by July 30, 2010 why the case should not be dismissed for lack of prosecution. (Order, dated July 1, 2010 (docket no. 32)). In lieu of such a response, on August 19, 2010, plaintiff filed what he styled a summary-judgment motion, in the course of which he reported that discovery was complete. (See Pl.'s Mot. For Summ. J. 4-6). Defendants initially did not respond to the motion, but we directed that they provide such a response (Order, dated Oct. 15, 2010 (docket no. 38)), and they did eventually comply with that order. (See Defs.' Opp'n to Pl. Summ. J. Mot.). Based on the complete absence of any evidentiary proffer by plaintiff in support of his summary-judgment motion, the court denied the motion. (See Report & Recommendation, dated Feb. 16, 2011; Mem. & Order, dated Mar. 14, 2011).

After the denial of plaintiff's motion for summary judgment, we again ordered the parties to submit a joint pre-trial order, this time by Friday, May 20, 2011. (Order, dated Mar. 16, 2011 (docket no. 44)). As part of the order, we directed plaintiff to provide defendants' attorney with a list of his claims, his contentions of fact, a list of his expected trial witnesses and his trial exhibits. We further ordered defendants to provide equivalent

information to plaintiff. Finally, we ordered that defendants' counsel arrange for the preparation of the final version of the joint pre-trial order after a meeting between plaintiff and defendants' counsel to attempt to agree on stipulations of fact and the admissibility of exhibits. (Id.).

It does not appear that any of this took place. Instead, plaintiff submitted directly to the court his portion of a joint pre-trial order, containing his contentions of fact, the witnesses he intended to call, and a number of exhibits that seem irrelevant to anything that is in dispute in this case. (See Pl.'s "Joint Pre-Trial Order"). Similarly, defendants' counsel submitted their own part of the joint pre-trial order directly to the court. (See Defs.' "Joint Pre-Trial Order"). This submission mentioned defendants' contentions of fact, listed the witnesses they intended to call, and specified the exhibits that they intended to introduce. (See id.).

After submission of the two proposed pre-trial orders, defendants filed the current motion for summary judgment. Initially, however, the defendants' counsel neglected to serve a Rule 56.2 notice on plaintiff. We therefore provided this notice to plaintiff by order dated September 19, 2011 and extended the

9

plaintiff's time to file opposing papers. Plaintiff subsequently filed opposition papers, which seem to consist largely of extracts or summaries of court decisions and commentaries concerning standards under Rule 56. (Order, dated Sep. 19, 2011 (docket no. 48); see Pl.'s Opp'n to Def. Summ. J. Mot.). As part of his response, plaintiff seeks to amend his complaint, and he also seeks to compel discovery from defendants, though he offers no specifics as to the factual basis for either request. (Pl.'s Opp'n to Def. Summ. J. Mot.).


### ANALYSIS


We first address plaintiff's motion to amend, and then assess the defendants' summary judgment motion.


### A. The Motion to Amend


Plaintiff seeks leave to file what amounts to a second amended complaint. (See Pl.'s Opp'n to Def. Summ. J. Mot. at App. "Proposed Amended Complaint Civil Rights Suit -- Jury Trial Demanded -- 'Jim Crow Laws'" ("Proposed 2d Am. Compl.")). He does not explain either the substance of the changes that he seeks to make from his current pleading or to justify the timing of the application, but a

10

comparison of the draft pleading with the first amended complaint reflects that he is seeking to add several new claims, including one for abuse of process and one or more for violation of various provisions of the New York State Constitution. He also proposes to add a number of defendants, including the City of New York and Police Commissioner Ray Kelly, as well as to reinsert claims against the dismissed unknown defendant "John de la Cruz." (See Proposed 2d Am. Compl. 1). Predictably, defendants have not responded to this motion, but we nonetheless deny it.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend the complaint] when justice so requires." The court may, however, deny an amendment "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).

Plaintiff filed his original complaint in early 2009. He subsequently amended it, and, more than two years later, he has sought to amend it again. We deny the application for at least two reasons. First, the proposed application is futile and, second, plaintiff's extraordinary delay is unexplained and the addition of new claims and parties at this stage would unjustifiably prejudice

11

defendants and would unreasonably frustrate the court's efforts to bring this case to a close.

The question of futility usually turns on whether the proposed new allegations serve a purpose, that is, whether they state a viable new claim against a current defendant or add a party against whom such a claim is stated. See, e.g., New Majority Holdings, LLC v. Ghaida, 2012 WL 4741950, *1-2 (S.D.N.Y. Oct. 3, 2012). The proposed new complaint would add Commissioner Kelly and the City as defendants, but it offers no clue as to why either of them should be a defendant in this case. Similarly, plaintiff would again add the mysterious MTA officer after his prior dismissal, even while admitting in the pleading that plaintiff still has no information as to this persons's true identity. Furthermore, to the extent that plaintiff would include a claim for abuse of process, he fails to justify that addition, since the complaint does not allege any facts that would support such a claim. To articulate a claim for abuse of process, a plaintiff must allege that a defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Cook v.

Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)). Plaintiff does not allege that any defendant used such legal process, whether for a good or bad reason. Finally, to the extent that plaintiff would invoke various provisions of the New York State Constitution, he offers no factual basis for asserting them against the current defendants in this case.

As for the timing of plaintiff's application, it was made well after the filing of defendants' Rule 56 motion and long after the close of the discovery period. In comparable circumstances, the Second Circuit has upheld the denial of a motion to amend where the party "waited more than three years to seek an amendment, and did so only after confronted with a motion for summary judgment." City of New York v. Group Health Inc., 649 F.3d 151, 158 (2d Cir. 2011). See also Longman v. Wachovia Bank, N.A., 702 F.3d 148, 151 (2d Cir. 2012). That is precisely the case here.

In sum, plaintiff's application to amend his complaint is denied.

B. Defendants' Summary-Judgment Motion

Before assessing defendants' summary-judgment motion, we

13

briefly summarize the basic standards that govern requests for summary-judgment relief. We then turn to an evaluation of the party's arguments, organizing our discussion on a claim-by-claim basis.

1. Summary-Judgment Standards

The court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Shade v. Hous. Auth., 251 F.3d 307, 314 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986)). It is axiomatic that the responsibility of the court in deciding a summary-judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co.,

14

804 F.2d 9, 11 (2d Cir. 1986); see, e.g., Anderson, 477 U.S. at 255; Howley v. Town of Stratford, 217 F.3d 141, 150-51 (2d Cir. 2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the "materials in the record, including depositions, documents, electronically stored information, affidavits, stipulations... or other materials" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see, e.g., Celotex, 477 U.S. at 323; Koch v. Town of Brattleboro, 287 F.3d 162, 165 (2d Cir. 2002). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy his initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. See, e.g., Celotex, 477 U.S. at 322-23, 325; PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). If the movant fails to meet his initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 161 (1970); Giannullo v. City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003).

If the moving party carries his initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact. See, e.g., Beard v. Banks, 548 U.S. 521, 529 (2006); Celotex, 477 U.S. at 323-24; Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001). In doing so, the opposing party cannot rest merely on allegations or denials of the factual assertions of the movant, Fed. R. Civ. P. 56(e) (requiring that an affidavit or declaration submitted to oppose a motion "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant... is competent to testify on the matters stated"); see, e.g., Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 59-60 (2d Cir. 2004), nor can he rely on his pleadings or on merely conclusory factual allegations. See, e.g., Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). He must also "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005). Rather, he must present specific evidence in support of his contention that there is a genuine dispute as to the material facts. See, e.g., Celotex, 477 U.S. at 324; Scott v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); Rexnord Holdings, Inc. V. Bidermann, 21 F.2d 522, 525-26 (2d Cir. 1994). In other words, he must demonstrate that there is

sufficient evidence for a reasonable jury to find in his favor. Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 455-56 (2d Cir. 2007) (citing Anderson, 477 U.S. at 249).

We note that, as a general matter, we must take care to construe a pro se litigant's papers liberally, in deference to his pro se status. See Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) (affording "special solicitude" to pro se litigants "confronted with motions for summary judgment"); Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (noting that pro se litigants are to be given "special latitude on summary judgment motions") (internal quotation marks omitted) (quoting Reyes v. Koehler, 815 F. Supp. 109, 112 (S.D.N.Y. 1993)). This does not, however, "relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted). In particular, "a pro se party's bald assertion, completely unsupported by evidence, is not sufficient to overcome [or prevail on] a motion for summary judgment." Lyerly v. Koenigsmann, 2006 WL 1997709, *2 (S.D.N.Y. July 17, 2006) (internal quotation marks omitted) (quoting Odom v. Keane, 1997 WL 576099, *3 (S.D.N.Y. Sept. 17, 1997)).

17

2. <u>Assessment of the Motion</u>

In addressing the defendants' motion, we encounter certain procedural and substantive peculiarities ascribable to both sides' respective submissions. Defendants' papers contain no evidence and no citations to evidence pertinent to the claims at issue in this case. Rather, their counsel merely asserts, in conclusory fashion, in a series of paragraphs in a Rule 56.1 Statement that there is no evidence to support plaintiff's various factual contentions about his encounter with Ruddy de la Cruz and the unidentified MTA officer. In neither this document nor in a separate declaration does counsel proffer what the facts are, much less cite to any pertinent evidence. (<u>See</u> <u>generally</u> Defs.' Rule 56.1 Statement).

In opposition, plaintiff has supplied a stack of pages, akin to a memorandum of law, that ignore the specific facts and instead contain a series of quotations from various court decisions and commentaries pertaining to the standards for summary judgment and the requirements for motion papers under Rule 56. Liberally construed, we may interpret this submission as tantamount to an argument that defendants have not met their initial burden on summary judgment. (<u>See</u> Pl.'s Opp'n to Def. Summ. J. Mot. 24, 37). In addition, at the conclusion of this part of plaintiff's

18

submission, he alludes to the facts assertedly found in his "memorandum of law" (id. at 47), though he included nothing on the current motion that refers explicitly to the facts. Notwithstanding that failing, we may again liberally interpret this statement by plaintiff as seeking to incorporate his papers in support of his earlier, and unsuccessful, summary-judgment motion, which did contain a recitation of his version of the encounter. See Crum v. Dodrill, 562 F. Supp. 2d 366, 376 (N.D.N.Y. 2008) (court may conduct independent review of record to identify factual dispute when a party is pro se). Finally, plaintiff includes (1) an affidavit from a man named William F. Bankhead, who reports that he witnessed plaintiff file a complaint with the New York City Police Department in June or July 2009, about the 2007 incident (referred to as a "physical attack by Ruddy de la Cruz," "accompanied by a rogue cop") and (2) a copy of correspondence that plaintiff apparently sent to the MTA referring to a "Corrupt Cop of MTA Using the Name 'De La Cruz,' a Male." (See Pl.'s Opp'n to Def. Summ. J. Mot. Ex. C).


At the outset, it appears that defendants failed to meet their initial Rule 56 burden since they have not sought (1) to demonstrate what the undisputed material facts are, and (2) to establish that, based on those facts, they are entitled to judgment as a matter of law. Indeed, their Rule 56.1 statement is not evidence, see, e.g.,

19

Giannullo, 322 F.3d at 140, and, as noted, it does not refer to any
evidence and does not articulate the facts that defendants regard
as material.

Rule 56 contemplates that a party moving for judgment will
proffer admissible evidence of the material facts, see, e.g., id.
at 140-41; see also Vermont Teddy Bear Co. v. 1-800 Beargram Co.,
373 F.3d 241, 244 (2d Cir. 2004), and defendants have failed to do
so. That alone may be a proper basis to deny the motion.[5]

Liberally construing plaintiff's papers, we conclude that he
has shown at least a triable dispute of material fact as to what
occurred during his encounter with defendant Ruddy de la Cruz. In
this regard, we look beyond the inadequate papers of both sides on
the current Rule 56 motion and examine various sources of more
specific factual contentions by the litigants, including plaintiff's

---

[5] This conclusion is not in tension with the observation that
to survive summary judgment, the party with the burden of proof
must offer evidence sufficient to demonstrate a triable issue as
to the material facts. See, e.g., Brown v. Eli Lilly & Co., 654
F.3d 347, 358 (2d Cir. 2011). In seeking summary judgment, the
moving party must at least specify what underlying facts he
contends are beyond dispute and material to the other side's
claims. In this case the parties appear to agree that there was
an encounter as Ruddy de la Cruz sought unsuccessfully to recover
his saxophone, but they disagree as to what occurred during that
encounter. Defendants' motion papers, however, offer no hint of
their version of the encounter.

own prior summary-judgment motion, the respective pre-trial order submissions of the parties made before the current motion was filed, and the respective factual summaries by the two sides at our pretrial conference.[6]

In plaintiff's Rule 56 motion, he recounts that Ruddy de la Cruz and another person invaded his work place, demanded the return of the saxophone, went on an unauthorized search of the premises in an apparent effort to find it, threatened him with physical harm, and apparently, at some point, physically restrained him from leaving. (Pl.'s Summ. J. Mot. (docket no. 33) 3-4). He further recounts that unidentified persons from Ruddy de la Cruz's family threatened plaintiff and his family on multiple occasions. (Id. at 4). In plaintiff's portion of the joint pre-trial order he recounted in substance the same series of alleged events (see Pl.'s "Joint Pre-Trial Order" ¶ iv), and in his appearance before the court at

---

[6] In various contexts the courts have agreed that they may look beyond the immediately relevant court documents when seeking information as to the substance of a pro se plaintiff's case. See, e.g., Omoniyi v. Dep't of Homeland Sec., 2012 WL 892197, *5 (S.D.N.Y. Mar. 13, 2012)(citing cases) (court may look to motion submissions by plaintiff in opposition to motion to dismiss as a supplement to his complaint). In addition, for pro se plaintiffs, courts have relied for summary-judgment motions on papers that did not constitute affidavits or declarations. See, e.g., Robles v. Khahaifa, 2012 WL 2401574, *7 (W.D.N.Y. June 25, 2012); Jackson v. Ricks, 2006 WL 2023570, *9 n.10 (N.D.N.Y. July 18, 2006).

21

our conference he reiterated in substance the same account. (Tr. 9-12).

It bears mention that defendants have conceded that Ruddy de la Cruz left his saxophone with plaintiff for an overhaul, that he did not return for it until a year and three months had passed, that plaintiff told de la Cruz that he could not locate the instrument or claimed that he had given it away, that de la Cruz had then later returned to plaintiff's premises with a relative in an effort to retrieve his instrument after plaintiff had initially failed to produce it, that at some point de la Cruz left the premises and found an MTA officer nearby who was a complete stranger and inveigled him to assist in attempting to retrieve the instrument, and that the officer had tried unsuccessfully to mediate between plaintiff and de la Cruz. (Id. at 6-7).

Given the absence of any question that there was an encounter of some nature between de la Cruz and Perez, and that an MTA officer was somehow involved, and in view of the starkly differing versions of what occurred, there can be little doubt that there are disputes of fact that are subject to trial if they are material to one or more of the claims asserted by plaintiff. To determine materiality, we briefly assess the claims pressed by Perez.

22

a. <u>Claims Under 42 U.S.C. § 1983</u>

Defendants move for summary judgment on any claim asserted under section 1983 -- presumably for false arrest and false imprisonment -- on the ground that plaintiff has not proffered any evidence that defendants were acting under color of state law, either by themselves or in concert with a government agent. (<u>See</u> Def. Mem. in Supp. of Summ. J. Mot. 5-7). We disagree.

To maintain an action under 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988). There is no dispute that Ruddy and Dolca de la Cruz are not government agents; indeed, plaintiff himself classifies them as real estate brokers. (<u>See</u> Am. Compl. ¶ 5). Plaintiff attempts to sustain the claims by asserting that Ruddy de la Cruz acted in concert with an MTA Police Officer, whom he refers to in the complaint as "John de la Cruz." (<u>See</u> <u>id.</u> at ¶ 4). As noted, although "John de la Cruz" has been dismissed from this case as a result of the plaintiff's inability to identify and serve this individual (<u>see</u> Mem. & Order, dated Mar. 14, 2011 (docket no. 43)), defendants have admitted through their counsel that at some

23

point during the encounter that triggered this lawsuit, Ruddy de la Cruz met an MTA officer and brought him into plaintiff's premises in an apparent effort to persuade Perez to surrender the saxophone. Although the parties' versions of the encounter differ, if plaintiff persuades the trier of fact that the two men searched his premises without authorization and prevented him from leaving while doing so, the trier of fact could find sufficient evidence that Ruddy de la Cruz acted in concert with a government official, under color of law. Such a finding could potentially support a conclusion that Ruddy de la Cruz, in conjunction with the officer, violated plaintiff's Fourth and Fourteenth Amendment rights to be free from an unreasonable arrest or search. See generally Brentwood Acad. v. Tennessee Secondary School Athletics Ass'n, 531 U.S. 288, 295-97 (2001) (standards for assessing "under color of state law"); Adickes, 398 U.S. at 152 (acting in concert under section 1983).

Since this is the only ground on which defendant Ruddy de la Cruz seeks summary judgment on these claims (see Def. Mem. in Supp. of Summ. J. Mot. 4-7), this aspect of his motion should be denied with respect to Mr. de la Cruz.

However, because plaintiff has failed to articulate any factual basis for inferring any involvement by defendant Dolca de la Cruz in

24

the event involving the MTA officer, summary judgment on plaintiff's
1983 claims against her is warranted. In addition, while both
parties seem to agree that a male relative of Ruddy de la Cruz --
possibly his son-in-law (Tr. 6) -- participated in the encounter
with the MTA officer, no such individual was ever named in the
complaint or the amended complaint, nor was anyone else served.
Clearly, there is no legal basis for imposing legal liability on an
unserved "family" based on the conduct of an unidentified individual
family member. In short, the 1983 claims cannot survive against the
ambiguously-identified "de la Cruz family."

      b. <u>Common-Law False Arrest & False Imprisonment</u>

Defendants also move for summary judgment on plaintiff's
common-law false-arrest and false-imprisonment claims. (<u>Id.</u> at 7-8).
Under New York law, the elements of false arrest and false
imprisonment are substantially the same. <u>Weyant v. Okst</u>, 101 F.3d
845, 852 (2d Cir. 1996). To prevail, the plaintiff must prove that
"(1) the defendants intended to confine the plaintiff, (2) the
plaintiff was conscious of the confinement, (3) the plaintiff did
not consent to the confinement, and (4) the confinement was not
otherwise privileged." <u>Singer v. Fulton Cnty. Sheriff</u>, 63 F.3d 110,
118 (2d Cir. 1995); <u>accord</u> <u>Savino</u>, 331 F.3d at 75.

If credence is given to plaintiff's account that he was detained while Ruddy de la Cruz and the MTA officer searched his premises, then a trier of fact could find an intent to confine plaintiff, that he was conscious of and did not consent to that confinement, and that the confinement was not privileged. Accordingly, summary judgment cannot be granted to Ruddy de la Cruz on these claims.

As to defendants Dolca de la Cruz and "the de la Cruz family," summary judgment is appropriate for the same reasons as are articulated with respect to the section 1983 claims.

c. Intentional Infliction of Emotional Distress

Plaintiff's third claim is for intentional infliction of emotional distress. To sustain such a claim, he must show "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996); see also Howell v. New York Post Co., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993). Defendants seek summary judgment on this claim, contending that plaintiff cannot satisfy the first element, intent. (Def. Mem. in

26

Supp. of Summ. J. Mot. 10-11). We agree.

The burden to establish the requisite conduct is substantial. Howell, 81 N.Y.2d at 122, 596 N.Y.S.2d at 353. Plaintiff must show that the defendant engaged in conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized [society].'" Martin v. Citibank, N.A., 762 F.2d 212, 220 (2d Cir. 1985) (quoting Restatement of Torts, Second, § 46 cmt. d (1965)); see Fisher v. Maloney, 43 N.Y.2d 553, 558, 402 N.Y.S.2d 991, 993 (1978); Murphy v. Am. Home Products Corp., 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236 (1983). Plaintiff fails, as a matter of law, to meet this standard.

In substance, plaintiff proffers a factual narrative in which Ruddy de la Cruz, accompanied by another individual, came to plaintiff's premises -- which were commercial in nature and, presumably, partly available to the public -- and demanded the return of his saxophone, and, upon being told by Perez that he no longer had possession of it, insisted on searching the premises to see if they could locate it. Whether this episode involved the commission of one or more torts -- constitutional or otherwise -- these facts do not remotely approach the type of misconduct that

27

would qualify as intentional infliction of emotional distress. <u>See</u>, <u>e.g.</u>, <u>Collom v. Village of Freeport</u>, 691 F. Supp. 637, 641 (E.D.N.Y. 1988); <u>Arrington v. Liz Claiborne, Inc.</u>, 260 A.D.2d 267, 268, 688 N.Y.S.2d 544, 547 (1st Dep't 1999); <u>Navarro v. Fed. Paper Bd. Co.</u>, 185 A.D.2d 590, 594, 586 N.Y.S.2d 381, 384 (3d Dep't 1992).[7]

In short, this claim is subject to summary judgment in favor of all defendants.

d. <u>Negligence</u>

Plaintiff asserts a claim for negligence based on the purported negligent hiring, retention, training, and supervision of MTA Police Officer "John de la Cruz." In this portion of his pleading, plaintiff refers to "The De La Cruz Family" as a unit and purports to impose liability upon them based on the doctrine of respondeat superior. (Am. Compl. ¶ 45).

---

[7] We note that plaintiff has alleged that "defendants" -- not otherwise identified, but presumably members of the the de la Cruz family who, at a minimum, we understand to include Ruddy and Dolca de la Cruz -- had telephoned him and conveyed unspecified threats, and that someone in the de la Cruz family had mailed an unspecified package to plaintiff's mother in the Dominican Republic. (Am. Compl. ¶ 15). These vague pleading allegations do not assist plaintiff's resistance to defendants' summary-judgment motion.

Whether these allegations are treated as an attempt to assert a constitutional or a common-law claim, plaintiff cannot sustain his negligence claim. If he were asserting a constitutional claim, he would have to name the MTA -- the presumptive government employer of the MTA officer -- and would have to establish not mere negligence by its agent, but deliberate indifference by the defendant agency to the rights of the public. See, e.g., Rivera v. Metro. Transit Auth., 750 F. Supp. 2d 456, 464 (S.D.N.Y. 2010); Ellison v. City of New Rochelle, 62 A.D.3d 830, 833, 879 N.Y.S.2d 200, 203 (2d Dep't 2009). He does not plead such a claim. Indeed, the MTA is not named as a defendant, and plaintiff purports to assert the claim only against the "de la Cruz Family." Plaintiff also fails to offer even a hint of a factual basis for his asserted claim in his pleading, in his motion papers, and in his portion of the joint pre-trial order.

If we read the claim as based on common-law negligence, it fares no better. The MTA officer referred to by both sides was presumably an employee of the MTA, not of Ruddy de la Cruz or the "de la Cruz Family," whatever that term may refer to. Plaintiff also does not proffer any evidence that the "de la Cruz" family or any named defendant acted negligently; rather, he asserts that Ruddy de la Cruz engaged in intentional tortious conduct.

29

To the extent that plaintiff attempts to suggest that members of the de la Cruz family bribed a corrupt MTA officer (see Am. Compl. ¶¶ 17-18, 45-53) -- a suggestion for which there is no apparent factual support -- plaintiff's claim for negligent hiring is clearly off-point.

Accordingly, summary judgment on this claim must be granted in favor of all defendants.

e. The Conspiracy Claims

Plaintiff's next two claims, asserted against all defendants, are for conspiracy under 42 U.S.C. §§ 1981 and 1982[8] and for conspiracy "with racial animus." (Am. Compl. 11-13). Defendants' motion targets this set of claims, although it mis-characterizes them as being asserted under section 1983. (Def. Mem. in Supp. of Summ. J. Mot. 11-12). Plaintiff cannot demonstrate a factual basis for invocation of the cited statutory provisions, and his reference to "hate crimes" in the next section of his complaint cannot survive

---

[8] One of the preceding claims listed in the complaint was under section 1983 for "civil rights deprivation," but was asserted only against the defendant MTA officer. (Am. Compl. 9). Since the unknown and unserved "John de la Cruz" was dismissed from the case, this claim is no longer operative.

as a separate claim.

Section 1981(a) provides that,

All person within the jurisdiction of the United States
shall have the same right in every State and Territory to
make and enforce contracts, to sue, be parties, give
evidence, and to the full and equal benefit of all laws and
proceedings for the security of persons and property as is
enjoyed by white citizens, and shall be subject to like
punishments, pains, penalties, taxes, licenses and
exactions of every kind, and to no other.

Similarly, section 1982 specifies that "[a]ll citizens of the
United States shall have the same right, in every State and
Territory, as is enjoyed by white citizens thereof to inherit,
purchase, lease, sell, hold, and convey real and personal
property."

To sustain a claim under section 1981, the plaintiff must
demonstrate a racially-based interference with his right to
contract or maintain a contractual relationship or benefit from a
contract. See, e.g., Domino's Pizza, Inc. v. McDonald, 546 U.S.
470, 475-77 (2006). As for claims under section 1982, the plaintiff
must show a racially-based deprivation of property or property
rights, that is, most notably discrimination in the rental or sale
of property. See generally Jones v. Alfred H. Mayer Co., 392 U.S.
409, 437-41 (1968); see also Tennessee v. Lane, 541 U.S. 509, 561

31

(2004).

Plaintiff in this case can satisfy neither set of requirements. Though he alludes to racial epithets uttered by the individuals who allegedly invaded and searched his business, he fails to demonstrate any denial of a right to enter into a contract or to establish or maintain a contractual relationship, or to purchase or rent personal or real property, as a result of racial animus.

Reading plaintiff's pleading liberally, we infer that he may be seeking to assert a claim under 42 U.S.C. § 1985(3), which provides, in part:

> If two or more persons in any State or Territory conspire... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation,

32

against any one or more of the conspirators.

"To state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999); see also Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d 584, 586-87 (2d Cir. 1988) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)). As this wording suggests, the action that is the subject of the conspiracy must be motivated by some class-based discriminatory intent or racial animus. See Thomas, 165 F.3d at 146; Gleason v. McBride, 869 F.2d 688, 695 (2d Cir. 1989).


Plaintiff offers no evidence that any defendant -- acting with or without the MTA officer -- conspired to deprive him of his civil rights as a result of racial or other class-based animus. That is fatal to this version of the conspiracy claim. See, e.g., Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1088 (2d Cir. 1993) (noting "an essential element to each cause of

action is a requirement that the alleged discrimination took place because of the individual's race").

Although the complaint contains a separately worded set of allegations in support of a claim for a conspiracy founded on "racial animus," or a "hate crimes" violation," (Am. Compl. 11), we note that plaintiff's set of purely conclusory allegations does not save any variant of his conspiracy theories. See, e.g., Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 617 (1987) (pleading "racial discrimination" without specifics is inadequate). At the summary-judgment stage the plaintiff must proffer potentially admissible evidence sufficient to create a triable issue of fact, and in this instance Perez entirely fails to do so.

Finally, we note that "New York does not recognize civil conspiracy to commit a tort as an independent cause of action." Steir v. Schreiber, 25 A.D.3d 519, 522, 810 N.Y.S.2d 431, 434 (1st Dep't 2006). Hence, even if plaintiff's allegations were read as an attempt to state, much less support, a claim under state law, he fails to articulate a viable claim.

As a result, summary judgment for all defendants must be granted on plaintiff's conspiracy claims, however they may be

34

characterized.

    f. <u>Extortion</u>

    Finally, plaintiff asserts a claim for what he labels as "extortion." (Am. Compl. 13). Extortion is defined under the federal criminal code as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. §1951(b)(2). Similarly, state law defines the crime as occurring when a person compels or induces another to deliver property to himself or a third person by instilling fear in the complainant that the actor will otherwise cause the complainant physical injury or cause damage to complainant's property, among other things. N.Y. Penal Law §155.05(2)(e)(viii).

    However, the commission of a crime does not necessarily yield a civil claim, <u>see</u>, <u>e.g.</u>, <u>Daniel v. Safir</u>, 135 F. Supp. 2d 367, 376 (E.D.N.Y. 2001); <u>Nat'l Trust Co. v. Gleason</u>, 77 N.Y. 400 (1879), and the law simply does not recognize a civil claim premised on tortious extortion. In any event, plaintiff fails to allege, much less offer evidence for, a claim that would yield civil liability by Ruddy de la Cruz based on plaintiff's stated theory. He has

asserted that de la Cruz insisted on searching his premises for the saxophone and temporarily deprived him of his ability to depart. That does not yield a separate claim for the coerced surrender by Perez of his property to de la Cruz. There is no dispute that the saxophone in question belonged to Ruddy de la Cruz, and that Perez never surrendered the saxophone to de la Cruz; indeed, plaintiff has represented that he gave it away to the Salvation Army before de la Cruz ever came to claim it. If he means to refer to possible efforts by de la Cruz to collect on his state court judgment, he has offered no evidence of such efforts, and in any event a judgment creditor is entitled to pursue the seizure of property owned by the judgment debtor in order to satisfy the judgment. See Bud-Lee Ski Centers, Inc. v. State, 116 A.D.2d 715, 716, 497 N.Y.S.2d 768, 770 (2d Dep't 1986).

Plaintiff offers no other factual basis on which to sustain a claim against any of the other defendants, and summary judgment is therefore appropriate as to all defendants.

g. Plaintiff's Possible Rule 56(f) Application

Plaintiff's motion papers, at least in their initial title, include a request to compel discovery. That said, the only item in

36

his papers pertinent to discovery is a copy of a document labeled "Plaintiff's Request for Production of Documents, Admissions, Interrogatories to Defendant." (See Pl.'s Opp'n to Def. Summ. J. Mot. B). There is no indication when or whether that document had previously been served on defendants, and no explanation as to the relationship of any of the requests in that document to the issues posed by the summary-judgment motion.

If this submission were deemed, as plaintiff describes it, to be an effort to compel discovery, it would fail both because it came long after the close of the discovery period and because plaintiff fails to demonstrate the propriety of his discovery requests.

Even if we construe this aspect of plaintiff's submission liberally as a Rule 56(f) affidavit requesting additional discovery, plaintiff fails to justify such a request. A Rule 56(f) motion must specify "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." Hudson River Sloop Clearwater, Inc. v. Dep't of Navy, 891 F.2d 414, 422 (2d Cir. 1989); Burlington Coat Factory

37

Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 926 (2d Cir. 1985). Plaintiff does not meet these requirements.

It is not clear from plaintiff's opposition papers which facts he might seek in discovery that would create a genuine issue of material fact. Other than a reference to his efforts to obtain from the MTA an identification of the purported "John de la Cruz," plaintiff does not reference any other facts pertinent to the discovery issue. It follows that he also does not show how such information might create a genuine issue of material fact, nor does he demonstrate what efforts he previously made to obtain those facts, or why those attempts were unsuccessful. Plaintiff simply cannot prevail on a Rule 56(f) motion.

<u>CONCLUSION</u>

For the reasons stated, we deny plaintiff's motion to amend the complaint and we recommend that defendants' motion for summary judgment be granted in part and denied in part. Specifically, we recommend that the court retain for trial only plaintiff's claims against Ruddy de la Cruz arising under the Fourth Amendment and common law for false arrest and unlawful search, and that all other claims, including all claims against Dolca de la Cruz and the "de

38

la Cruz family," be dismissed.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable J. Paul Oetken, Room 2101, 40 Foley Square, New York, New York, 10007, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York, 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

DATED: New York, New York
       February 20, 2013

RESPECTFULLY SUBMITTED,

_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

39

Copies of the foregoing Order and Report & Recommendation have been
mailed this date to:

Mr. Mendelssohn Perez
29-35 Wadsworth Avenue
Basement Apartment
New York, New York 10033

Joyce Campbell Priveterre, Esq.
110 Wall Street, 11th Floor
New York, New York 10005